1  CHRISTOPHER CHIOU
    Acting United States Attorney
2  Nevada Bar No. 14853
    Richard B. Casper
3  Nevada Bar No. 8980
    Assistant United States Attorney
4  400 South Virginia, Suite 900
    Reno, Nevada 89501
5  Phone: (775) 784-5438
    Richard.Casper@usdoj.gov
6

    CANDINA S. HEATH
7  Senior Counsel
    Candina.Heath2@usdoj.gov
8  THOMAS R. DETTORE
    Trial Attorney
9  Thomas.Dettore@usdoj.gov
    Computer Crime and Intellectual Property Section
10  U.S. Department of Justice
    Washington, D.C. 20005
11  Telephone: (202) 307-1049

12  *Attorneys for the United States of America*

13

              **UNITED STATES DISTRICT COURT**
14              **FOR THE DISTRICT OF NEVADA**

15  UNITED STATES OF AMERICA,      No. 3:20-cr-00045-MMD-CLB

16          Plaintiff,

17          v.             **Binding Plea Agreement Pursuant to Fed. R.**
                          **Crim. P. 11(c)(1)(C) for Defendant**
18  EGOR IGOREVICH KRIUCHKOV,    **Egor Igorevich Kriuchkov**

19          Defendant.

20

21       This plea agreement between Egor Igorevich Kriuchkov ("defendant") and the United

22  States Attorney's Office for the District of Nevada (the "USAO"), with concurrence from the

23  Department of Justice Computer Crime and Intellectual Property Section, sets forth the parties'

    agreement regarding the criminal charge referenced herein and the applicable sentence, fine,
24
    restitution, and forfeiture in the above-captioned case. **This is a binding plea agreement**

1    **pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The government and defendant

2    agree that the offense level to which the parties stipulate is correct and that a sentence within

3    Offense Level 9 (between 4 to 10 months' imprisonment) and a supervised release term of 3

4    years, no fine, restitution of documented costs incurred by the victim company, and defendant's

5    removal from the United States, is appropriate in this case. If the district court accepts the plea

6    agreement, it will be obligated to accept the parties' stipulated offense level and impose a

7    sentence within the guideline range mandated by that offense level. This agreement binds only

8    defendant, the USAO, and the district court, and does not bind the U.S. Probation Office, or any

9    other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory

10   authorities. This agreement does not prohibit the USAO or any agency or third party from

11   seeking any other civil or administrative remedies, including civil forfeiture *in rem,* directly or

12   indirectly against defendant or defendant's property.

13         This agreement becomes effective upon signature by defendant, defendant's counsel, and

14   an Assistant United States Attorney.

## I. DEFENDANT'S OBLIGATIONS

16   1.       Defendant agrees to:

17         a.  At the earliest opportunity requested by the USAO and provided by the district

18   court, appear and plead guilty to Count One of the indictment in this case, which charges

19   defendant with Conspiracy to Intentionally Cause Damage to a Protected Computer, in

20   violation of 18 U.S.C. § 371 (conspiracy to violate 18 U.S.C. §§ 1030(a)(5)(A), 1030(c)(4)(B)(i),

21   and 1030(c)(4)(A)(i)(I));

22         b.  Stipulate to the facts set forth in this agreement;

23         c.  Stipulate that the offense of conviction is an 18 U.S.C. § 371 conspiracy to

24   intentionally cause damage to a protected computer in violation of 18 U.S.C. §§ 1030(a)(5)(A);

2

d.  Abide by all agreements regarding sentencing contained in this agreement;

e.  Not seek to withdraw defendant's guilty plea once it is entered unless the district court later does not accept the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5);

f.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

g.  Not commit any federal, state, or local crime;

h.  Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

i.  Before and after sentencing, upon request by the district court, the USAO, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to the USAO within three (3) weeks from entry of the plea. Defendant agrees that the district court may enter any order necessary to effectuate or facilitate disclosure of defendant's financial information.

j.  To facilitate payment of any fine, forfeiture, restitution, or assessment, surrender assets defendant obtained directly or indirectly as a result of defendant's crimes, to voluntarily release funds and property under defendant's control or in which defendant has any property interest, before and after sentencing, to pay any fine or restitution identified in this agreement, agreed to by the parties, or ordered by the district court.

3

k.   The forfeiture of the property and the imposition of the forfeiture of the property as set forth in this Plea Agreement, the Bill of Particulars, and the Forfeiture Allegation of the Criminal Indictment.

2.      Defendant agrees that restitution shall be ordered due and payable in full immediately after the judgment is entered, and that the full amount of any restitution ordered is subject to immediate enforcement and collection by the USAO or defendant's victims, or both. Defendant agrees that any schedule of payments entered by the district court is a schedule of the minimum payment due and does not prohibit or limit the methods by which the USAO may immediately enforce and collect the judgment in full. Defendant acknowledges that restitution may not be discharged, in whole or in part, in any present or future bankruptcy proceeding.

3.      Defendant agrees that he is not a citizen of the United States, and that he is a native of Russia, and a citizen of Russia. Defendant agrees and stipulates to accept an order of deportation knowing that it will result in his immediate deportation from the United States upon completion of any period of incarceration. Defendant agrees that the order be issued for his deportation to Russia. Defendant knowingly waives any and all rights to appeal, reopen, or challenge in any way the order of deportation.

## II. THE USAO'S OBLIGATIONS

4.      The USAO agrees to:

a.   Stipulate to facts agreed to in this agreement;

b.   Abide by all agreements regarding sentencing contained in this agreement;

c.   At sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1; and

d.  Not bring any additional charges against defendant arising out of the investigation in the District of Nevada which culminated in this agreement and based on conduct known to the USAO. However, the USAO reserves the right to prosecute defendant for (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

## III. ELEMENTS OF THE OFFENSE

5.  <u>Count One</u>: The essential elements of conspiracy under 18 U.S.C. § 371 are as follows:

| | |
|---|---|
| <u>First</u>: | Beginning on or about July 16, 2020, and ending on or about August 22, 2020, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; |
| <u>Second</u>: | the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and |
| <u>Third</u>: | one of the members of the conspiracy performed at least one overt act on or after July 16, 2020, for the purpose of carrying out the conspiracy. |

*See* Ninth Circuit Model Criminal Jury Instruction 8.20 (2010 ed.).

6.  The essential elements of intentional damage to a protected computer under 18 U.S.C. § 1030(a)(5)(A) are as follows:

| | |
|---|---|
| <u>First</u>: | the defendant knowingly caused the transmission of a program, information, a code, and a command to a computer; |
| <u>Second</u>: | as a result of the transmission, the defendant intentionally impaired without authorization the integrity and availability of data, a program, a system, and information; and |
| <u>Third</u>: | the computer was used in or affected interstate or foreign commerce or communication. |

*See* Ninth Circuit Model Criminal Jury Instruction 8.100 (2010 ed.).

## IV. CONSEQUENCES OF CONVICTION

7.  <u>Maximum Statutory Penalties</u>:  Defendant understands that the statutory maximum sentence the district court can impose for a violation of 18 U.S.C. § 371 as charged in

5

Count One, is: 5 years of imprisonment; a 3 year period of supervised release; a fine of USD $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of USD $100.

8.    Criminal Forfeiture: Defendant understands that the district court will impose forfeiture of the property.

9.    Parole Abolished:  Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

10.    Supervised Release:  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

11.    Factors under 18 U.S.C. § 3553: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limits the district court's discretion in determining defendant's sentence.

12.    Potential Collateral Consequences of Conviction:  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.

1 | Defendant understands that unanticipated collateral consequences will not serve as grounds to

2 | withdraw defendant's guilty plea.

3 |    13. <u>Potential Removal/Deportation Consequences of Conviction</u>:  Defendant

4 | understands that, if defendant is not a United States citizen, the felony conviction in this case

5 | may subject defendant to removal, also known as deportation, which may, under some

6 | circumstances, be mandatory; denial of citizenship; and denial of admission to the United States

7 | in the future. The district court cannot advise defendant fully regarding the immigration

8 | consequences of the felony conviction in this case, but defendant's attorney has advised him

9 | about the deportation risks of his guilty plea. Defendant understands that unexpected

10 | immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

11 | **V. FACTUAL BASIS**

12 |    14. Defendant admits that he is, in fact, guilty of the offense alleged in the indictment.

13 | Defendant acknowledges that if he elected to go to trial instead of pleading guilty, the USAO

14 | could prove his guilt beyond a reasonable doubt and establish its right to forfeit the specified

15 | property by preponderance of the evidence. Defendant further acknowledges that his admissions

16 | and declarations of fact set forth below satisfy every element of the charged offense and the

17 | offense of conviction. Defendant waives any potential future claim that the facts he admitted

18 | below are insufficient to satisfy the elements of the charged offense. Defendant admits and

19 | declares under penalty of perjury that the facts set forth below are true and correct and constitute

20 | acts occurring during the commission of the offense of conviction, in preparation for that

21 | offense, or in the course of attempting to avoid detection or responsibility for that offense.

22 |    15. From at least on or about July 15, 2020, and continuing through on or about

23 | August 22, 2020, in the State and Federal District of Nevada, and elsewhere, defendant, and

24 | others, knowingly combined, conspired, confederated, and agreed to commit an offense against

the United States in violation of Title 18, United States Code, Section 371, that is: to knowingly cause the transmission of a program, information, code, and command and, as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause a loss to one or more persons during any 1-year period aggregating at least $5,000 in value, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), 1030(c)(4)(B)(i) and 1030(c)(4)(A)(i)(I).

16.    Defendant agrees that the purpose of the conspiracy as alleged in the indictment was to recruit an employee of a U.S. company (Victim Company), located in the District of Nevada, to surreptitiously transmit malware provided by the conspirators into a protected computer[1] in Victim Company's network. The transmitted malware would allow defendant and the coconspirators to exfiltrate data from the network and extort a payment from Victim Company by threatening to disclose the data.

17.    On or about July 15, 2020, while in Russia, defendant and a coconspirator discussed[2] locating an employee of a U.S. company to target for the scheme. During this discussion, defendant stated he knew an individual employed at a very large U.S. company, and named Victim Company. The next day, defendant contacted this individual ("Employee") and arranged to meet with Employee in Nevada, during defendant's upcoming travels to the United States.

---

[1] Defendant agrees that during the pendency of the conspiracy, Victim Company's network was in contact with, and communicated with, the Internet.

[2] Except for the in-person meetings, all communications between defendant and others were through WhatsApp.

18.     On or about July 28, 2020, defendant traveled from Russia to the United States, first arriving in New York and then traveling to California. The coconspirators from Russia facilitated defendant's recruitment trip by providing funds to defendant for all expenses.[3]

19.     From on or about August 1, 2020, and continuing through on or about August 21, 2020, defendant traveled to Nevada numerous times to meet with Employee.

20.     On or about the evening of August 3, 2020, defendant met with Employee, and invited Employee to participate in a "special project" with him and his coconspirators. Defendant explained the "special project" as follows:

a.   The coconspirators would provide Employee with malware to surreptitiously transmit into Victim Company's network.

b.   The coconspirators would execute a Distributed Denial of Service ("DDoS") attack against Victim Company's network to divert Victim Company's attention from the malicious operation of the malware.

c.   The malware would allow the coconspirators to extract data from Victim Company's network.

d.   Once the data was extracted, the coconspirators would extort Victim Company for a substantial payment.

e.   Both defendant and Employee would be compensated for their roles in the scheme.

21.     Defendant agrees that he could reasonably foresee during his participation in the conspiracy that the intended surreptitious transmission of the malware would (a) be without the Victim Company's knowledge or authorization, (b) impair the integrity and availability of data,

---

[3] During defendant's U.S. recruitment trip, the coconspirators were in Russia while communicating with defendant regarding his expenses. The expenses included air fare, lodging, car rentals, and meals.

1    and (c) cause a loss to Victim Company during any 1-year period aggregating at least $5,000 in

2    value.

3        22.     On or about August 7, 2020, defendant again met with Employee[4] in Nevada and

4    continued to encourage Employee's participation in the "special project."

5        23.     From on or about August 17, 2020, and continuing through on or about August

6    19, 2020,[5] the following occurred during meetings between defendant and Employee in Nevada:

7            a.   Defendant informed Employee that the coconspirators: (i) agreed to provide

8    Employee a small advance payment via Bitcoin; (ii) reduced defendant's compensation to offset

9    an increase in the amount to be paid to Employee; (iii) expected Employee to provide

10   information about Victim Company's network to facilitate the development of the malware; and,

11   (iv) would begin paying Employee once the malware was transmitted.

12           b.   Defendant used his speaker phone feature to call a coconspirator located in Russia

13   in the presence of Employee.  They discussed: (i) Employee's compensation; (ii) Employee's role

14   to transfer malware to Victim Company's network; (iii) the execution of a DDoS attack on

15   Victim Company once the malware provided the coconspirators access; and (iv) that a

16   coconspirator would call Employee to provide guidance.

17           c.   Defendant assisted Employee in downloading a Tor browser application to

18   facilitate anonymous access to the Internet and explained how to set up a Bitcoin wallet through

19   the Tor browser.

20       24.     On or about August 21, 2020, during a final meeting between defendant and

21   Employee in Nevada, the following occurred:

22

23   _____

         [4] After the meeting on August 3, 2020, Employee reported defendant's proposed scheme to
24   Victim Company.  Victim Company reported the same to FBI, and from this point forward, Employee
     cooperated with the FBI.

         [5] Between August 8, 2020, and August 16, 2020, defendant and Employee were unable to meet.

1          a.  Defendant provided Employee with a cellular telephone and instructions to keep

2     it in "airplane" mode until contacted by defendant.

3          b.  Defendant advised Employee on the use of the telephone and to delete messages.

4          c.  Defendant told Employee that Employee should not act until the Bitcoin transfer

5     occurred.

6          d.  Defendant used his speaker phone feature to call a coconspirator located in

7     Russia in the presence of Employee.  They discussed that: (i) defendant left a telephone with

8     Employee; (ii) Employee would leave the telephone in airplane mode until prepayment arrived;

9     and (iii), another conspirator would address Employee's questions regarding timing of

10    payments.

11         25.     During the course of the above-described activities, defendant utilized the three

12    cellular telephones identified in paragraph 43a to communicate with Employee and with one or

13    more coconspirators and to conduct other acts in furtherance of the conspiracy.

14         26.     Defendant agrees the government can readily prove that Victim Company suffered

15    an actual loss of approximately USD $14,824.89 in responding to the potential threat posed by

16    defendant and the coconspirator during defendant's participation in the conspiracy.

17                              **VI. SENTENCING FACTORS**

18         27.     Discretionary Nature of Sentencing Guidelines:  Defendant understands that in

19    determining defendant's sentence, the district court is required to calculate the applicable

20    sentencing guidelines range and to consider that range, possible departures under the sentencing

21    guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant

22    understands that the sentencing guidelines are advisory only, that defendant cannot have any

23    expectation of receiving a sentence within the calculated sentencing guidelines range, and that

24    after considering the sentencing guidelines and the other § 3553(a) factors, the district court will

be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), however, if the district court accepts this plea agreement, it will be obligated to follow the parties' stipulated offense level and impose the agreed-upon sentence of 4 to 10 months' imprisonment, 3 years' supervised released, no fine, and restitution of costs documented by the victim company.

28. <u>Offense Level Calculations</u>: The parties stipulate to the following calculation of defendant's offense level under the sentencing guidelines; agree that these stipulations will bind the district court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) if it accepts this plea agreement and agree that they will not seek to apply or advocate for the use of any other base offense level(s) or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range except as expressly noted in the following paragraphs:

| | |
|---|---|
| Base Offense Level [USSG § 2B1.1(a)(2)]: | 6 |
| Actual Loss More than USD $6,500 [USSG § 2B1.1(b)(1)(B)]: | +2 |
| Scheme Committed Substantially Outside U.S. [USSG § 2B1.1(b)(10)(B)]: | +2 |
| A violation of 18 U.S.C. § 1030(a)(5)(A) [USSG § 2B1.1(b)(19)(A)(ii)]: | +4 |
| Conspiracy [USSG § 2X1.1(b)(2)]: | -3 |
| <u>Acceptance of Responsibility [USSG § 3E1.1]</u> | <u>-2</u> |
| Adjusted Offense Level: | 9 |

29. <u>Career Offender</u>: Defendant understands that defendant's offense level could be increased if defendant is a career offender under USSG §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

30. <u>Reduction for Acceptance of Responsibility</u>: Under USSG § 3E1.1(a), the USAO will recommend that defendant receive a two-level downward adjustment for acceptance of

12

1    responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the

2    guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the

3    amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit

4    facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides

5    false or misleading information to the USAO, the district court, Pretrial Services, or the

6    Probation Office; (e) denies involvement in the offense or provides conflicting statements

7    regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to

8    the offense; (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit

9    any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

10         31.    Under USSG § 3E1.1(b), if the district court determines that defendant's total

11   offense level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-

12   level downward adjustment pursuant to the preceding paragraph, the USAO will move for an

13   additional one-level downward adjustment for acceptance of responsibility before sentencing

14   because defendant communicated defendant's decision to plead guilty in a timely manner that

15   enabled the USAO to avoid preparing for trial and to efficiently allocate its resources. However,

16   the parties understand that the calculations set out in paragraph 28 preclude the applicability of

17   USSG § 3E1.1(b).

18         32.    Criminal History Category:  Defendant acknowledges that the district court may

19   base defendant's sentence in part on defendant's criminal record or criminal history. The district

20   court will determine defendant's criminal history category under the sentencing guidelines.

21         33.    Additional Sentencing Information:  The stipulated sentencing guidelines

22   calculations are based on information now known to the parties. Defendant understands that

23   both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying

24   relevant information to the U.S. Probation and Pretrial Services Offices and the district court

13

1    regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or

2    mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the

3    district court's sentencing guidelines calculations and determination of sentence. While this

4    paragraph permits both the USAO and defendant to submit full and complete factual

5    information to the U.S. Probation and Pretrial Services Offices and the district court, even if that

6    factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

7    paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed

8    to in this agreement. Good faith efforts to provide truthful information or to correct factual

9    misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

10          34.    Defendant acknowledges that the U.S. Probation Office may calculate the

11    sentencing guidelines differently and may rely on additional information it obtains through its

12    investigation. Defendant also acknowledges that the district court may rely on this and other

13    additional information as it calculates the sentencing guidelines range and makes other

14    sentencing determinations, and the district court's reliance on such information shall not be

15    grounds for defendant to withdraw defendant's guilty plea.

16                       **VII. POSITIONS REGARDING SENTENCING**

17          35.    **This is a binding plea agreement under Federal Rule of Criminal Procedure**

18    **11(c)(1)(C).** The parties will jointly recommend that the district court sentence defendant to a

19    sentence within USSG Offense Level 9.  In the event that a sentence within USSG Offense

20    Level 9 is outside defendant's sentencing guidelines range as determined by the district court,

21    the parties will jointly request a variance to the agreed upon USSG Offense Level. In agreeing

22    to this sentencing recommendation, the parties have taken into consideration all of the factors

23    set forth in 18 U.S.C. § 3553(a) and conclude that a sentence within USSG Offense Level 9 is a

24    reasonable sentence. The parties understand and Defendant acknowledges that, if the district

1  court accepts this binding plea agreement, imposing a sentence within USSG Offense Level 9

2  will be binding on the district court pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (C). Either

3  party may withdraw from this plea agreement in the event that the district court informs the

4  parties that it rejects this binding plea agreement. *See* Fed. R. 11(c)(5) and (d).

5      36.    If the district court rejects this binding plea agreement, defendant is advised that

6  (a) the district court is not required to follow the plea agreement; (b) both defendant and the

7  USAO have the opportunity to withdraw from the plea; and (c) if the plea is not withdrawn, the

8  district court may dispose of the case less favorably toward defendant than the plea agreement

9  contemplated, pursuant to Fed. R. Crim. P. 11(c)(5)(A)-(C). Defendant acknowledges, if the

10  district court rejects the plea agreement and defendant chooses not to withdraw defendant's

11  guilty plea, the district court does not have to follow the recommendation of either party.

12      37.    Notwithstanding its agreement to recommend a sentence as described above, the

13  USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-

14  conviction litigation.

15      38.    If defendant commits any act that results in the district court finding that

16  defendant is not entitled to a downward adjustment for acceptance of responsibility, the USAO

17  is entitled to argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a). In any such

18  event, Defendant remains bound by the provisions of this agreement and shall not have the

19  right to withdraw defendant's guilty plea.

20                  **VIII. WAIVER OF CONSTITUTIONAL RIGHTS**

21      39.    Defendant understands that by pleading guilty, defendant gives up the following

22  rights:

23          a.   The right to persist in a plea of not guilty;

24          b.   The right to a speedy and public trial by jury;

15

1    c.   The right to be represented by counsel—and if necessary have the court appoint

2    counsel—at trial. Defendant understands, however, that, defendant retains the right to be

3    represented by counsel—and if necessary have the court appoint counsel—at every other stage of

4    the proceeding;

5    d.   The right to be presumed innocent and to have the burden of proof placed on the

6    USAO to prove defendant guilty beyond a reasonable doubt;

7    e.   The right to confront and cross-examine witnesses against defendant;

8    f.   The right to testify and to present evidence in opposition to the charge, including

9    the right to compel the attendance of witnesses to testify;

10   g.   The right not to be compelled to testify, and, if defendant chose not to testify or

11   present evidence, to have that choice not be used against defendant; and

12   h.   The right to pursue any affirmative defenses, Fourth Amendment or Fifth

13   Amendment claims, and any other pretrial motions that have been filed or could be filed.

14   ### IX. WAIVER OF APPELLATE RIGHTS

15   40.   Waiver of Appellate Rights: Defendant knowingly and expressly waives (a) the

16   right to appeal any sentence imposed at or below 10 months' imprisonment; (b) the right to

17   appeal the manner in which the district court determined that sentence on the grounds set forth

18   in 18 U.S.C. § 3742; and (c) subject solely to the exceptions listed in the next paragraph, the right

19   to appeal any other aspect of the conviction, including but not limited to the constitutionality of

20   the statutes of conviction; any other aspect of the sentence; and any order of restitution or

21   forfeiture.

22   41.   Waiver of Post-Conviction Rights: Defendant also knowingly and expressly

23   waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's

24

1    conviction, sentence, and the procedure by which the district court adjudicated guilt and

2    imposed sentence, except non-waivable claims of ineffective assistance of counsel.

3        42.    Preservation of Evidence: Defendant acknowledges that the USAO and the

4    agencies investigating this case are not obligated or required to preserve any evidence obtained in

5    the investigation of this case.

6                                    X. FORFEITURE

7        43.    The defendant knowingly and voluntarily:

8            a.    Agrees to the district court imposing the civil judicial forfeiture or the

9    criminal forfeiture of:

10                i.    an iPhone X, model number A1901, serial number G0NW1D54JCL8;

11                ii.   a LG Phoenix 5, model number LM-K300AM, serial number

12                     007VTHJ0163129, IMEI number 353953111881291; and

13                iii.  an LG cell phone, model number LG GSM LM-X210APM, IMEI number:

14                     355437107230117

15   (all of which constitutes property);

16           b.    Agrees to the abandonment, the civil administrative forfeiture, the civil

17   judicial forfeiture, or the criminal forfeiture of the property;

18           c.    Abandons or forfeits the property to the United States;

19           d.    Relinquishes all possessory rights, ownership rights, and all rights, titles,

20   and interests in the property;

21           e.    Waives defendant's right to any abandonment proceedings, any civil

22   administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal

23   forfeiture proceedings of the property (proceedings);

24

f.      Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

g.      Waives any further notice to defendant, defendant's agents, or defendant's attorney regarding the abandonment or the forfeiture and disposition of the property;

h.      Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property; agrees not to contest, or to assist any other person or entity in contesting, the forfeiture; and agrees to withdraw immediately any claim, answer, petition, or other documents in any proceedings;

i.      Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, 32.2, and 43(a), including, but not limited to, forfeiture notice in the charging document, the court advising defendant of the forfeiture at the change of plea, the court having a forfeiture hearing, the court making factual findings regarding the forfeiture, the court failing to announce the forfeiture at sentencing, and all constitutional requirements, including but not limited to, the constitutional due process requirements of any proceedings concerning the property;

j.      Waives defendant's right to a jury trial on the forfeiture of the property;

k.      Waives all constitutional, legal, and equitable defenses and claims to the forfeiture or abandonment of the property in any proceedings, including, but not limited to, (1) constitutional or statutory double jeopardy defenses and claims and (2) defenses and claims under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

l.      Agrees to the entry of an Order of Forfeiture of the property to the United States;

m.      Waives the right to appeal any Order of Forfeiture;

18

1          n.      Agrees the property is forfeited to the United States;

2          o.      Agrees and understands the abandonment, the civil administrative

3    forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be

4    treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other

5    penalty the Court may impose upon defendant in addition to the abandonment or the forfeiture;

6          p.      Agrees and understands that on the government's motion, the court may at

7    any time enter an order of forfeiture or amend an existing order of forfeiture to include

8    subsequently located property or substitute property pursuant to Fed. R. Crim. P. 32.2(e) and

9    32.2(b)(2)(C);

10         q.      Acknowledges that the amount of the forfeiture may differ from, and may

11   be significantly greater than or less than, the amount of restitution; and

12         r.      Agrees to take all steps as requested by the USAO to pass clear title of the

13   property to the United States and to testify truthfully in any judicial forfeiture proceedings.

14   Defendant understands and agrees that the property represents proceeds and/or facilitating

15   property of illegal conduct and is forfeitable. Defendant shall provide the USAO with a full and

16   complete financial disclosure statement under penalty of perjury within 10 days of executing the

17   plea agreement. The financial statement shall disclose to the USAO all assets and financial

18   interests valued at more than $1,000. Defendant understands these assets and financial interests

19   include all assets and financial interests that defendant has an interest, direct or indirect, whether

20   held in defendant's name or in the name of another, in any property, real or personal. Defendant

21   shall also identify all assets valued at more than $1,000 which defendant has transferred to third

22   parties or diverted from defendant directly to third parties, since July 16, 2020, including the

23   location of the assets and the identity of any third party.

24

s.      The defendant admits the property is (1) any personal property that was used or intended to be used to commit or to facilitate the commission of a violation of 18 U.S.C. § 1030(a)(5)(A), or 18 U.S.C. § 371, conspiracy to violate such offense and (2) any personal property used or intended to be used to commit or to facilitate the commission of a violation of 18 U.S.C. § 1030(a)(5)(A), or 18 U.S.C. § 371, conspiracy to violate such offense and is subject to forfeiture pursuant to 18 U.S.C. § 1030(i)(1)(A) and (j)(1).

## XI. RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

44.     Consequence of withdrawal of guilty plea: Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than the district court rejecting the binding plea agreement or a claim and finding that entry into this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement and (b) should the USAO choose to pursue any charge not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

45.     Consequence of vacatur, reversal, or set-aside: Defendant agrees that if defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement, except that, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all

20

1  defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

2  trial claim with respect to any such action, except to the extent that such defenses existed as of

3  the date of defendant's signing this agreement.

### XII. BREACH OF AGREEMENT

5  46.     Defendant agrees that if, at any time after this agreement becomes effective,

6  defendant knowingly violates or fails to perform any of defendant's obligations under this

7  agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's

8  obligations are material, a single breach of this agreement is sufficient for the USAO to declare a

9  breach, and defendant shall not be deemed to have cured a breach without the express agreement

10  of the USAO in writing. If the USAO declares this agreement breached, and the district court

11  finds such a breach to have occurred, then: (a) if defendant has previously entered [a] guilty plea

12  pursuant to this agreement, defendant will remain bound by the provisions of this agreement and

13  will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its

14  obligations under this agreement.

15  47.     Following the district court's finding of a knowing breach of this agreement by

16  defendant, should the USAO choose to pursue any charge not filed as a result of this agreement,

17  then:

18      a.   Defendant agrees that any applicable statute of limitations is tolled between the

19  date of defendant's signing of this agreement and the filing commencing any such action.

20      b.   Defendant waives and gives up all defenses based on the statute of limitations, any

21  claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except

22  to the extent that such defenses existed as of the date of defendant's signing this agreement.

23      c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the

24  guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis

21

statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XIII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES.

48.     Defendant understands that the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors. Defendant understands that the district court is not a party to this agreement and is only bound by the parties' stipulated offense level and the parties' sentencing recommendation.

49.     Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

50.     Defendant understands that, if the district court rejects the plea agreement and defendant chooses not to withdraw defendant's guilty plea, the district court may ignore any sentencing recommendation, find facts or reach conclusions different from those agreed to by the parties, or impose any sentence up to the maximum established by statute, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that, if the district court rejects the plea agreement and defendant chooses not to withdraw defendant's guilty plea, no one—not the prosecutor, defendant's attorney, or the district court— can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIV. ADDITIONAL ACKNOWLEDGMENTS

51.     Defendant acknowledges that:

a.   Defendant read this agreement and it has been translated to defendant in its entirety, and defendant understands its terms and conditions.

b.   Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c.   Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d.   Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.   Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.   The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

g.   Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

52.     Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charge brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

53.     Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

54.     Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

55.     Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charge and chooses to take advantage of the promises set forth in this agreement and for no other reason.

## XIV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

56.    The parties agree that this agreement will be considered part of the record of

defendant's guilty plea hearing as if the entire agreement had been read into the record of the

proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

CHRISTOPHER CHIOU
Acting United States Attorney


/s/Richard A. Casper                                              March 16, 2021
RICHARD A. CASPER                                         Date
Assistant United States Attorney


/s/Candina S. Heath                                               March 16, 2021
CANDINA S. HEATH                                           Date
Senior Counsel
Computer Crime and Intellectual Property Section
United States Department of Justice


/s/Thomas R. Dettore                                             March 16, 2021
THOMAS R. DETTORE                                       Date
Trial Attorney
Computer Crime and Intellectual Property Section
United States Department of Justice


                                                                            3-16-21
EGOR IGOREVICH KRIUCHKOV                        Date
Defendant


/s/Christopher P. Frey                                            March 16, 2021
CHRISTOPHER P. FREY                                     Date
Attorney for Defendant
EGOR IGOREVICH KRIUCHKOV